UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| SHELBY SCHOLES, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:24-cv-02540 |
| ) | |
| v. ) | |
| ) | |
| THE CARLE FOUNDATION HOSPITAL ) | |
| d/b/a CARLE HEALTH, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

**NOW COMES** SHELBY SCHOLES ("Plaintiff"), by and through her undersigned counsel, complaining of THE CARLE FOUNDATION HOSPITAL d/b/a CARLE HEALTH ("Defendant") as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. Plaintiff brings this action seeking redress for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §2000e *et seq.*, as a result of Defendant unlawfully discriminating against Plaintiff on the basis of her sex (female) and pregnancy and for retaliation for her engagement in protected activity.

2. This lawsuit arises under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* as amended, ("ADA") seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability and Defendant's retaliation against Plaintiff for engaging in a protected activity under the ADA.

3. This action further arises under the Pregnancy Workers Fairness Act, 42 U.S.C.

§2000gg *et seq*. as amended, ("PWFA") for pregnancy-based discrimination, a failure to accommodate Plaintiff's pregnancy, and retaliation.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Title VII, the PDA, and the ADA are federal statutes.

5. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) as the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## ADMINISTRATIVE PREREQUISITES

6. All conditions precedent have been satisfied.

7. Plaintiff filed a charge of discrimination against Carle Health with the Equal Employment Opportunity Commission ("EEOC"). *See* attached Exhibit A.

8. Plaintiff received a Notice of Right to Sue from the EEOC as to Carle Health and Plaintiff filed this action within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. *See* attached Exhibit B.

## THE PARTIES

9. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Charleston, Illinois.

10. Defendant is a corporation not-for-profit hospital providing general, specialty, and emergency care health services.

11. Defendant maintains a principal place of business in Olney, Illinois.

12. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

13. At all times relevant, Defendant had at least fifteen employees, was an "employer"

2

as defined by Title VII, and was engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

14. Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. §12111(4).

15. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. §12111(5)(A).

## BACKGROUND FACTS

16. Plaintiff was employed by Defendant as a flight nurse from June 2023, until she was unlawfully terminated on August 27, 2024.

17. As a flight nurse, Plaintiff's job duties included, but were not limited to, the following:

- Assess patients and provide intensive care monitoring;
- Perform regular checks on the aircraft's medical equipment and ensure all medical supplies are adequate;
- Maintain communications between facilities that are providing care; and
- Observe all safety and procedures.

18. Plaintiff met or exceeded all of Defendant's performance expectations as indicated by her high marks on performance exams and evaluations.

19. Plaintiff, as a pregnant female, is a member of a protected class on the basis of sex, pregnancy, and disability.

20. Plaintiff is a member of a protected class on the basis of disability due to her high-risk pregnancy, as protected by the ADA.

21. Specifically, Plaintiff's pregnancy was high-risk because she was often sick and was eventually developed preeclampsia.

22. Preeclampsia is a serious blood pressure condition that develops during pregnancy which causes headaches, vision changes, pain in the upper stomach, nausea, vomiting, and potential damage to the liver and kidneys which can threaten the life of both the mother and the baby.

23. Plaintiff was able to perform all of her duties regardless of her pregnancy and/or the restrictions Plaintiff had were for a temporary period/could be performed in the near future as a result of her pregnancy. (PWFA, 42 U.S.C. §2000gg(7)(A-C)).

24. During Plaintiff's employment, Defendant subjected Plaintiff to different terms and conditions of employment than others not within her protected class (non-pregnant females, males, non-disabled individuals).

25. In or around October 2023, Plaintiff informed her employer that she was pregnant.

26. At that time, Plaintiff could no longer fit into the flight suits and requested a maternity suit from John Nichols for the team.

27. Instead of providing Plaintiff with one, John Nichols laughed and said, "How about just don't get pregnant," and then suggested Plaintiff "figure it out" by finding a men's suit.

28. In or around January 2024, Plaintiff's supervisor, Kristin Stringer (non-pregnant, non-disabled), became overly critical of her work, despite knowing Plaintiff had a high-risk pregnancy.

29. After completing two back-to-back flights, Plaintiff became ill and started vomiting, making it impossible for her to take another flight.

30. Plaintiff's partner, Nikki (LNU), and Plaintiff decided to take "crew rest."

31. However, Ms. Stringer criticized Plaintiff, saying she was "wasting the company's money" and insisted that if she was sick, she should go home.

32. Ms. Stringer also required Plaintiff to call her every time she got sick, even if it was in the middle of the night.

33. In or around February 2024, Plaintiff was forced to sign a document alleging that she was rude and aggressive to hospital staff, though she had no memory of such an incident.

34. In fact, a charge nurse at an outside hospital had spoken to Plaintiff in a hostile manner, and Plaintiff began advocating for a patient, as is expected of her.

35. Meanwhile, Plaintiff's coworker was in a separate argument with paramedics.

36. Plaintiff was reprimanded and forced to sign the document, but her coworker, who was non-pregnant, was not.

37. Ms. Stringer refused to show Plaintiff the formal complaint and would not let Plaintiff explain the situation.

38. Plaintiff's pregnancy caused her extreme fatigue, negatively affected her bodily functions, and required her to minimize the amount of weight she lifted at a given time.

39. As a result of her pregnancy, Plaintiff experienced severe medical complications which warranted reasonable accommodation.

40. At 28 weeks, Plaintiff's pregnancy caused her to have complications, and at her doctor's urging, Plaintiff was required to follow 25 lbs lifting restrictions from February 13, 2024 to May 6, 2024.

41. Fearing retaliation from Ms. Stringer, Plaintiff hesitated to report this, but she ultimately informed Defendant of her accommodations.

42. Defendant reacted with distain to Plaintiff's notification of her pregnancy, making Plaintiff feel singled out and uncomfortable.

43. Ms. Stringer immediately took Plaintiff off the schedule and directed Plaintiff to

HR, stating that no accommodations could be made at AirLife.

44. Plaintiff was told by HR to file for short-term disability, even though she did not want to.

45. In or around March 2024, Plaintiff was informed that she needed to interview for accommodations.

46. The interviews were scheduled, and Plaintiff was told that the managers would call Plaintiff at a specific time.

47. However, Plaintiff never received the calls.

48. After informing the HR member that Plaintiff had been brushed off for the accommodation interviews, the interviews were rescheduled.

49. Eventually, Plaintiff found two positions at different clinics within Carle Foundation, but both offered approximately $10 less per hour in pay.

50. Plaintiff's reasonable accommodation did not pose an undue burden on Defendant and was temporary in nature in accordance with her pregnancy status.

51. When Plaintiff complained to HR, Plaintiff was told her pay could not be matched since she no longer held her previous position.

52. On or around April 15, 2024, Plaintiff was scheduled for an induction of labor due to preeclampsia and was discharged on or around April 19, 2024.

53. During this time, Ms. Stringer texted Plaintiff, instructing her to call Mr. Nichols, who informed Plaintiff that her position had been posted for others to apply for while she was on maternity leave.

54. When Plaintiff asked why she hadn't been notified about this back in or around February 2024, and Mr. Nichols told Plaintiff, "It's the law, and you can look it up," advising

Plaintiff not to fight it because their legal team had already been contacted.

55. Mr. Nichols also said that if no one applied for Plaintiff's job, she could reapply upon her return.

56. Plaintiff, horrified by the fact that her employment was in danger while she was on maternity leave immediately contacted HR, who expressed shock upon learning this information.

57. HR was surprised when Plaintiff informed them that Mr. Nichols had stated he was posting her job for someone else.

58. Later that day, Stephanie Workman (HR) called Plaintiff to say that she and Mr. Nichols had been discussing posting Plaintiff's job "for a while," without informing Plaintiff.

59. On or around April 25, 2024, HR called to apologize and confirmed that Plaintiff would have her job back after completing her maternity leave.

60. They also informed Plaintiff that Ms. Stringer and Mr. Nichols had acted improperly and were not allowed to take such actions.

61. Plaintiff returned from maternity leave on or around July 11, 2024.

62. Prior to Plaintiff's return, she wrote a letter to HR expressing concerns about retaliation from Ms. Stringer and Mr. Nichols, but she was ignored.

63. Upon Plaintiff's return, Ms. Stringer began documenting false allegations of incompetence and failures on Plaintiff's part.

64. Despite requesting additional training to catch up from the time Plaintiff missed due to pregnancy, she was targeted by Ms. Stringer.

65. Other crew members, including Base 2 Supervisor Jordan Stone, warned Plaintiff that Ms. Stringer was looking for any reason to get Plaintiff fired, clearly in retaliation for Plaintiff's numerous reports of discrimination to HR.

66. During Plaintiff's re-orientation, last-minute schedule changes were made, and when she complained, she was told, "Too bad."

67. In or around August 2024, Plaintiff explained to the educator, Jessica Serafini (non-pregnant, non-disabled), that she had studied during her maternity leave and felt competent.

68. Plaintiff suggested transferring to Jordan's team for a better work environment, and she agreed, saying she would speak to Mr. Nichols and Jordan.

69. Despite Plaintiff's requests, she never was transferred to Jordan's base.

70. Those requests to be transferred were denied several times.

71. Jordan apologized for Ms. Stringer's behavior and arranged a meeting with Mr. Nichols and Ms. Serafini to address the ongoing issues.

72. However, Mr. Nichols was dismissive, and Ms. Serafini's demeanor toward Plaintiff changed after that meeting.

73. Plaintiff formally requested a transfer through HR, but her request was ignored.

74. Ms. Stringer's unchecked behavior worsened—she openly discussed Plaintiff negatively with others and blatantly ignored Plaintiff, making Plaintiff feel uncomfortable.

75. On or around August 12, 2024, Plaintiff was failed on a performance exam that she had performed well on.

76. Plaintiff was placed on a baseless performance improvement plan (PIP).

77. Plaintiff reported that her preceptor, Tracy, was not training her but instead sleeping on the job to Ms. Serafini, Mr. Nichols, Dr. Weir, and several other HR team members, her concerns were not addressed.

78. During Plaintiff's second test on or around August 27, 2024, Dr. Wier, the medical director, couldn't make eye contact with Plaintiff.

79. While Plaintiff felt confident in her performance, the examiners appeared to intentionally try to stump Plaintiff.

80. When Plaintiff provided correct answers, they initially told Plaintiff she was wrong, only to claim they had "heard [her] wrong" once Plaintiff proved her answers were correct.

81. Plaintiff was failed again in pre-textual fashion.

82. Later that day, Mr. Nichols, Ms. Serafini, and Dr. Wier informed Plaintiff that they had decided to "cut ties" with her, placing her on leave and instructing her to contact HR.

83. Additionally, there was a third person present during the test-out, which was unusual.

84. They claimed it was to "work the mannequins" used to display vital signs on a screen, but it was clear she was there as a biased witness.

85. On or around August 30, 2024, Plaintiff contacted HR and made it clear that she wanted an investigation into these actions.

86. HR informed Plaintiff that they would help her find another position within the organization.

87. Plaintiff attempted to take HR up on this offer, but they did not seem to take her concerns seriously.

88. Plaintiff escalated the matter to Lauren Schmid, the Chief Human Resource Officer, who set up a Teams meeting with Plaintiff.

89. Plaintiff explained her concerns, and Ms. Schmid seemed receptive.

90. However, several weeks later, she called with an update, essentially stating that Plaintiff's claims were unfounded.

91. On or around September 30, 2024, Plaintiff received an email from HR stating that

she was not terminated but placed on a 30-day unpaid administrative leave.

92. Since then, Plaintiff has taken exams at several other companies and passed them all, clearly demonstrating her competency and Defendant's pregnancy- and disability-based animus against her.

93. Plaintiff never failed any tests at AirLife prior to returning from maternity leave.

94. In response to Plaintiff's complaint and request for accommodations, Defendant unlawfully terminated Plaintiff's employment on or about August 27, 2024.

95. Based on Plaintiff's employment record and timing relating to her requests and/or complaints, there could be no question that Plaintiff's termination was based on her pregnancy and in retaliation for opposing the blatant gender and pregnancy discrimination

96. At all times relevant, Plaintiff met or exceeded Defendants' performance expectations.

## DAMAGES

97. As a result of Defendant's conduct, Plaintiff suffered damages, including: loss of employment, loss of income, loss of employment benefits, mental anguish, financial distress, emotional distress, humiliation, and loss of enjoyment of life.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964
### (Pregnancy-Based Discrimination)

98. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

99. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based of Plaintiff's pregnancy, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

100. Plaintiff met or exceeded performance expectations.

101. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

102. Defendant terminated Plaintiff's employment on the basis of Plaintiff's pregnancy.

103. Plaintiff is a member of a protected class under Title VII, due to Plaintiff's pregnancy.

104. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

105. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of the Pregnant Workers Fairness Act
### (Pregnancy-Based Discrimination)

106. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

107. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's pregnancy-related medical conditions in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.* as adopted by the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg(7).

108. In pertinent part, the PWFA states,

It shall be an unlawful employment practice for a covered entity to—

(4) require a qualified employee to take leave, whether paid or unpaid, if another reasonable accommodation can be provided to the known limitations related to the pregnancy, childbirth, or related medical conditions of the qualified employee… (PWFA, 42 U.S.C. §2000gg-1(4)).

109. Plaintiff met or exceeded performance expectations.

110. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

111. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

112. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

113. Plaintiff is a member of a protected class under the PWFA, due to Plaintiff's pregnancy-related medical conditions.

114. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

115. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT III
### Violation of the Pregnant Workers Fairness Act
### (Failure to Accommodate)

116. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

117. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's pregnancy-related medical conditions in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*. as adopted by the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg(7).

118. Plaintiff has a known limitation in the form of a physical or mental condition related to, affected by, or arising out of pregnancy.

119. Plaintiff was a qualified employee under the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg(6)(A-C).

120. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

121. Plaintiff's reasonable accommodations that were requested was not an undue burden on Defendant.

122. Defendant did not accommodate Plaintiff's pregnancy.

123. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

124. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
### Violation of Title VII of the Civil Rights Act of 1964
### (Retaliation)

125. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

126. Plaintiff is a member of a protected class under 42 U.S.C. §2000e, *et seq*.

127. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted sex discrimination and/or sex-based harassment.

128. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

129. Plaintiff suffered adverse employment action in retaliation for engaging in a

protected activity.

130. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's engagement in protected activity, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

131. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

132. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

### COUNT V
### Violation of the Pregnancy Workers Fairness Act
### (Retaliation)

133. Plaintiff repeats and re-alleges paragraphs above as if fully stated herein.

134. Plaintiff is a member of a protected class under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*. as adopted by the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg(7).

135. During Plaintiff's employment with Defendant, Plaintiff requested and attempted to utilize accommodations for her pregnancy-related medical conditions.

136. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg-1(5), *et seq*.

137. Defendant took adverse action in terms, conditions, and/or privilege of Plaintiff's employment on account of her requesting or using a reasonable accommodation to the known limitations related to the pregnancy.

138. By virtue of the foregoing, Defendant retaliated against Plaintiff, thereby violating the Pregnant Workers Fairness Act, 42 U.S.C. §2000gg(7).

139. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

140. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

141. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VI
### Violation of the Americans with Disabilities Act
### (Disability-Based Discrimination)

142. Plaintiff repeats and re-alleges the preceding paragraphs as if fully stated herein.

143. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

144. Plaintiff met or exceeded performance expectations.

145. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

146. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

147. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

148. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's

disability.

149. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

150. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VII
### Violation of the Americans with Disabilities Act
### (Failure to Accommodate)

151. Plaintiff repeats and re-alleges the preceding paragraphs as if fully stated herein.

152. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*.

153. Plaintiff is a qualified individual with a disability.

154. Defendant was aware of the disability and the need for accommodations.

155. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

156. Plaintiff's reasonable accommodations that was requested was not an undue burden on Defendant.

157. Defendant did not accommodate Plaintiff's disability.

158. Plaintiff is a member of a protected class under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*., due to Plaintiff's disability.

159. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

160. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VIII
### Violation of the Americans with Disabilities Act
### (Retaliation)

161. Plaintiff repeats and re-alleges the preceding paragraphs as if fully stated herein.

162. Plaintiff is a member of a protected class under 42 U.S.C. §12101, *et seq.*

163. During Plaintiff's employment with Defendant, Plaintiff [describe the protected activity (i.e. requesting accommodations, utilizing approved accommodations, reporting disability-based harassment)].

164. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*

165. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of disability-based harassment or discrimination.

166. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory or harassing conduct complained of by Plaintiff.

167. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff [describe the protected activity (i.e. requesting accommodations, utilizing approved accommodations, reporting disability-based harassment)], thereby violating the Americans with

17

Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*

168. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

169. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

170. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff requests the following relief:

a. A judgment in favor of Plaintiff and against Defendants;

b. Back pay with interest;

c. Payment of interest on all back pay recoverable;

d. Front pay;

e. Compensatory and punitive damages;

f. Reasonable attorney's fees and costs;

g. Pre-judgment interest if applicable; and

h. Any further relief as the Court deems just and proper

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: November 26, 2024

Respectfully submitted,

*/s/ Mohammed O. Badwan*
Mohammed O. Badwan
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
(630) 575-8180
mbadwan@sulaimanlaw.com